UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL        'O'

| Case No. | 2:21-cv-07989-CAS (AFMx) | Date | August 19, 2024 |
|---|---|---|---|
| Title | SANTA BARBARA POLO CLUB, INC. ET AL V. LIFESTYLE LICENSING B.V. ET AL | | |

Present: The Honorable    CHRISTINA A. SNYDER

| Catherine Jeang | Deborah Parker | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:
Brad Estes
Paul Llewellyn

Attorneys Present for Defendants:
Lukas Sosnicki

**Proceedings:** ZOOM HEARING RE: SANTA BARBARA POLO CLUB AND SB MEMBERS, LLC'S MOTION TO CONFIRM ARBITRATION AWARD AND FOR ENTRY OF JUDGMENT (Dkt. 40, filed on JULY 12, 2024)

## I. INTRODUCTION

On October 6, 2021, Santa Barbara Polo Club Inc. ("SB Polo") and SB Members, LLC ("SB Members") (collectively, "petitioners") filed a petition to compel arbitration against Lifestyle Licensing B.V. ("Lifestyle B.V.") and Lifestyle Equities C.V. ("Equities C.V."), (collectively, "respondents"). Dkt. 1.

On April 11, 2022, respondents filed a notice of non-opposition to the petition to compel arbitration. Dkt. 17. Respondents noted that "[w]hile Respondents dispute the Petition's factual and legal arguments, Respondents will consent to arbitrate before the American Arbitration Association ("AAA"). By this Non-Opposition, Respondents do not concede this Court's jurisdiction (beyond that which is necessary to refer Petitioners' arbitration demand to arbitration before the AAA). Respondents also do not consent to any other request in the Petition's Prayer for Relief." Id. at 2.

On May 9, 2022, the Court stayed this action and reserved judgment on all other issues, including, but not limited to, this Court's jurisdiction to enforce an arbitration award and attorneys' fees. Dkt. 24.

On October 31, November 1, and November 7-8, 2023, the arbitrator ("the Arbitrator") conducted a four-day evidentiary hearing. Dkt. 40 ("Mot.") at 10. On

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                          'O'

| Case No. | 2:21-cv-07989-CAS (AFMx) | Date | August 19, 2024 |
|---|---|---|---|
| Title | SANTA BARBARA POLO CLUB, INC. ET AL V. LIFESTYLE LICENSING B.V. ET AL | | |

February 22, 2024, the Arbitrator issued a Partial Final Award, granting petitioners' claim for declaratory relief, denying the remainder of the parties' claims, and determining that petitioners were the prevailing party for purposes of attorneys' fees and costs. Id. On April 29, 2024, the Arbitrator issued a Final Award, awarding petitioners $1,441,449 in attorneys' fees and costs, with prejudgment interest. Id. at 10-11.

On July 12, 2024, petitioners filed a motion to confirm the arbitration award and for entry of judgment. Mot. On July 22, 2024, respondents filed an opposition to petitioners' motion and, in the alternative, a motion to vacate or correct the arbitration award. Dkt. 41 ("Opp."). On July 29, 2024, petitioners filed a reply in support of their motion and an opposition to respondents' motion to vacate or correct the arbitration award. Dkt. 43 ("Reply").

On August 19, 2024, the Court held a hearing. Petitioners' motion to confirm the arbitration award and for entry of judgment is presently before the Court. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

II.     BACKGROUND

    A.     The Parties and The 1997 Co-Exist Agreement

Petitioner SB Polo is a California non-profit corporation with its principal place of business at 3300 Via Real, Carpinteria, California 93013. Dkt. 1 ¶ 6. Petitioner SB Members is a Delaware limited liability company that is the global master licensee of the SB Polo Club-related trademarks in dispute. Id. ¶ 7.

Respondent Lifestyle B.V. is a Dutch limited liability company with its principal place of business at Gondel 1, 1186 MJ, Amstelveen, Noord-Holland, Netherlands. Id. ¶ 8. Respondent Equities C.V., a Dutch limited partnership, is allegedly an assignee of the rights in the Beverly Hills Polo Club-related trademarks in dispute. Id. ¶ 9. It licenses the rights in the Beverly Hills Polo Club-related trademarks to Lifestyle B.V. Id.

In 1997, to resolve an ongoing trademark dispute related to the use of the SANTA BARBARA POLO & RACQUET CLUB ("SBPC Marks") and BEVERLY HILLS POLO CLUB ("BHPC Marks") marks, Santa Barbara Polo & Racquet Club entered into an agreement (the "1997 Agreement" or "coexistence agreement"), dkt. 1-1, ex. 1, with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                           'O'

| Case No. | 2:21-cv-07989-CAS (AFMx) | Date | August 19, 2024 |
|---|---|---|---|
| Title | SANTA BARBARA POLO CLUB, INC. ET AL V. LIFESTYLE LICENSING B.V. ET AL | | |

BHPC Marketing, Inc. ("BH Marketing").  Id. ¶ 13.  The 1997 Agreement provides that the parties will "amicably settle" their ongoing legal disputes regarding their respective trademarks, and the agreement "preclude[s] any future controversies regarding their respective marks and use thereof[.]"  Dkt. 1-1, Ex. 1 at 21.  It further states that Santa Barbara Polo and BH Marketing consent to the use by the other of their respective marks "in any or all countries in the world for use in connection with any goods and services," and each party "agrees not to interfere with or oppose [] registration [of their respective marks] and hereby specifically consents to such registration."  Id. at 21-22.

The SBPC Marks and BHPC Marks contain both word and design marks:



Dkt. 1 ¶¶ 13-14.  At the time of the 1997 Agreement, BH Marketing owned the BHPC Marks.  Id. ¶ 15.  BH Marketing later assigned rights in the BHPC Marks to entities controlled by the Haddad family, and ultimately, the rights to use the BHPC Marks in Europe were assigned and licensed to respondents—entities affiliated with Eli and Daniel Haddad.  Id.

> B.   Petitioners' Allegations
>
>> 1.   Respondents Allegedly Seek Benefits From the 1997 Agreement

Petitioners allege that respondents sought benefits from, and knowingly exploited, the 1997 Agreement.  Id. ¶ 16.  In April 2013, counsel for respondents' parent company wrote to petitioners that "there may be a previous arrangement in place between the previous owners of our BHPC trademark and the owners of your Santa Barbara trademark."  Id.  Upon respondents' request for this agreement, petitioners provided it.  Id.  In June 2015, when respondents sought to register trademarks in Mexico, they requested that petitioners "sign [a] consent letter for Mexico *in accordance with the coexistence agreement*[.]"  Id. (emphasis in original).  Petitioners provided a consent

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:21-cv-07989-CAS (AFMx) | Date | August 19, 2024 |
|---|---|---|---|
| Title | SANTA BARBARA POLO CLUB, INC. ET AL V. LIFESTYLE LICENSING B.V. ET AL | | |

letter which stated that respondents, through their predecessor entity, *"are parties to a worldwide coexistence agreement dated October 6, 1997*, and pursuant to that agreement [petitioners] consent to this registration." Id. (emphasis in original). Petitioners allege that respondents accepted this letter and did not dispute their description as a party to the 1997 Agreement until 2019, when they began violating the Agreement. Id. ¶¶ 16-17.

      2.     The English Action

On June 5, 2020, respondents brought an infringement action against petitioners in England. Id. ¶ 18. Petitioners challenged the English High Court's jurisdiction, arguing that the arbitration clause in the 1997 Agreement required that the dispute be adjudicated in arbitration before the AAA. Id. The arbitration clause set forth in the 1997 Agreement states, in relevant part:

> Any controversy, dispute or claim with regard to, arising out of, or relating to this Agreement, including but not limited to its scope or meaning, breach, or the existence of a curable breach, shall be resolved by arbitration in Los Angeles, California, in accordance with the rules of the American Arbitration Association. Any judgment upon an arbitration award may be entered in any court having jurisdiction over the parties.
>
> If any arbitration or other proceeding is brought for the breach, enforcement or interpretation of this Agreement, the successful or prevailing party or parties shall be entitled to recover its attorneys' fees and other costs incurred in that action or proceeding, in addition to any other relief to which said party or parties may be entitled.

Dkt. 1-1, Ex. 1 at 23. In response, respondents argued that they should not be bound by the arbitration clause because they are not signatories to the 1997 Agreement. Dkt. 1 ¶ 18. The English High Court agreed with petitioners, held that the AAA has jurisdiction over the dispute, and stayed the action. Id. Specifically, the English High Court held: "'[T]he effect of the [Agreement] under Californian law and, in particular, the effect of its arbitration provision, is that the arbitration provision binds the [Respondents]'—the assignee and licensee of the trademarks covered by the agreement." Id. ¶ 19 (citing Dkt. 1-2, Ex. 2 ¶ 96). In February 2021, respondents applied to the English Court of Appeal for permission to appeal the English High Court's order. Id. ¶ 20. Permission to appeal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:21-cv-07989-CAS (AFMx) | Date | August 19, 2024 |
|---|---|---|---|
| Title | SANTA BARBARA POLO CLUB, INC. ET AL V. LIFESTYLE LICENSING B.V. ET AL | | |

was granted, and the English High Court's decision was affirmed. Id.; see also dkt. 40-1, Exh. 14 at 147.

### 3. Petitioners' Arbitration Demand

Respondents also filed a trademark infringement claim against petitioners in India and "have persistently attacked the AAA's jurisdiction in Los Angeles." Dkt. 1 ¶ 21.

On February 24, 2021, petitioners filed an arbitration demand with the AAA, seeking monetary damages and declaratory relief. Id. The declaratory relief claim seeks an order declaring that respondents are bound by the 1997 Agreement, and petitioners' use of the SBPC Marks therefore does not infringe the BHPC Marks. Id. Petitioners also allege they were "damaged by Respondents' interference with Petitioners' contractual relations with their sublicensees by improperly claiming the SBPC Marks infringe upon the BHPC Marks." Id.

In response to petitioners' arbitration demand, respondents filed a jurisdictional objection with the AAA, arguing that "[t]he question of whether a nonsignatory is a party to an arbitration agreement is one for the trial court in the first instance[.]" Id. ¶ 22. Petitioners responded that the English High Court already determined that respondents are bound by the arbitration clause in the 1997 Agreement, which is all that California contract law requires for an arbitrator to exercise jurisdiction over petitioners' claims. Id. Further, petitioners argued that the Arbitrator need only recognize the English High Court's order under principles of international comity. Id.

On July 9, 2021, the Arbitrator issued a jurisdictional order, staying the arbitration until one of three events occurred: "[T]he parties agree to proceed [in arbitration], there is a non-appealable decision in the English courts, or a US court compels respondents to proceed." Id. (citing Dkt. 1, Ex. 8 ¶ 70) (emphasis omitted).

On October 6, 2021, in response to the Arbitrator's jurisdictional order, petitioners brought the instant action to compel arbitration against respondents. See generally dkt. 1.

### III. LEGAL STANDARD

"[T]he Supreme Court [has] set a standard that permits only a limited review of an arbitrator's decision." Local Joint Exec. Bd. of Las Vegas v. Riverboat Casino, Inc., 817 F.2d 524, 527 (9th Cir. 1987). Thus "it is not the court's role to determine whether the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:21-cv-07989-CAS (AFMx) | Date | August 19, 2024 |
|---|---|---|---|
| Title | SANTA BARBARA POLO CLUB, INC. ET AL V. LIFESTYLE LICENSING B.V. ET AL | | |

arbitrator has reached the same result the court would have reached." Id. Nor is it the court's role "to decide the rightness or wrongness of the arbitrator's contract interpretation." Pacific Reinsurance Management Corp. v. Ohio Reinsurance Corp., 935 F.2d 1019, 1024 (9th Cir. 1991). "'[T]he district court must accord considerable deference to the arbitrator's judgment' and should not 'vacate the award because it interpreted the agreement differently.'" Id. (quoting New Meiji Market v. United Food and Comm'l Workers Local Union 905, 789 F.2d 1334, 1335 (9th Cir. 1986)). The Ninth Circuit has continuously held that judicial review of an arbitrator's decision "is both limited and highly deferential." Barnes v. Logan, 122 F.3d 820, 821 (9th Cir. 1997). An award must be confirmed if the arbitrator even "arguably construed or applied the contract and acted within the scope of [her] authority." Id.

The Federal Arbitration Act ("FAA") embodies a strong federal policy favoring arbitration and provides only limited grounds upon which a district court may vacate, modify, or correct an arbitration award. Lagstein v. Certain Underwriters at Lloyd's, London, 607 F.3d 634, 640 (9th Cir. 2010). Moreover, the FAA "provides the exclusive grounds for challenging an arbitration award within its purview." Lafarge Conseils Et Etudes, S.A. v. Kaiser Cement & Gypsum Corp., 791 F.2d 1334, 1338 (9th Cir. 1986). An arbitration award can be vacated only:

> (1) where the award was procured by corruption, fraud, or undue means;
> 
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> 
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> 
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL    'O'

| Case No. | 2:21-cv-07989-CAS (AFMx) | Date | August 19, 2024 |
|---|---|---|---|
| Title | SANTA BARBARA POLO CLUB, INC. ET AL V. LIFESTYLE LICENSING B.V. ET AL | | |

9 U.S.C. § 10(a). "As is apparent from the language, these standards are highly deferential to the arbitrator." Johnson v. Wells Fargo Home Mortg., Inc., 635 F.3d 401, 414 (9th Cir. 2011). Where a party seeks to vacate an award based on fraud, that party "must show that the fraud was (1) not discoverable upon the exercise of due diligence prior to the arbitration, (2) materially related to an issue in the arbitration, and (3) established by clear and convincing evidence." Lafarge, 791 F.2d at 1339 (citing Dogherra v. Safeway Stores, Inc., 679 F.2d 1293, 1297 (9th Cir. 1982)). Vacatur on the ground that arbitrators exceeded their powers is proper "only when arbitrators purport to exercise powers that the parties did not intend them to possess or otherwise display a manifest disregard of the law," or "when the award is 'completely irrational.'" Kyocera Corp. v. Prudential-Bache Trade Servs., Inc., 341 F.3d 987, 997, 1002-03 (9th Cir. 2003) (en banc) (quoting Todd Shipyards Corp. v. Cunard Line, Ltd., 943 F.2d 1056, 1059-60 (9th Cir. 1991)). "The burden of establishing grounds for vacating an arbitration award is on the party seeking it." U.S. Life Ins. Co. v. Superior Nat'l Ins. Co., 591 F.3d 1167, 1173 (9th Cir. 2010). In considering whether to vacate an award, district courts apply "an extremely limited review authority." Kyocera, 231 F.3d at 998.

Additionally, the Court may make an order "modifying or correcting [an] award upon the application of any party to the arbitration":

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

9 U.S.C. § 11.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL 'O'

| Case No. | 2:21-cv-07989-CAS (AFMx) | Date | August 19, 2024 |
|---|---|---|---|
| Title | SANTA BARBARA POLO CLUB, INC. ET AL V. LIFESTYLE LICENSING B.V. ET AL | | |

### IV. DISCUSSION

#### A. Personal Jurisdiction

Respondents argue that the Court should deny petitioners' motion because petitioners do not sufficiently establish the Court's personal jurisdiction over respondents—"two Dutch companies that do not sell any products in the United States." Opp. at 2, 5-6. First, respondents assert that they agreed to arbitrate in this district but, as the Court recognized in its May 9, 2022 order, they specifically reserved their right to dispute jurisdiction. Id. at 6. Second, they argue that the 1997 Agreement does not support the Court's personal jurisdiction over them because they never signed it and thus were never contractually bound to arbitrate or to personal jurisdiction in this Court. Id. at 6-7. Third, petitioners contend that "personal jurisdiction to *compel* arbitration is also not necessarily the same as personal jurisdiction to *confirm* an arbitration award" and that "the 1997 Agreement itself indicates judgment on the resulting award may potentially have to be sought elsewhere." Id. at 7 (emphasis in original).

In reply, petitioners argue that respondents waived their objection to personal jurisdiction by filing a notice of non-opposition to the petition to compel arbitration and by engaging in the arbitration extensively for two years.[1] Reply at 12-13. Petitioners also contend that the Court may exercise personal jurisdiction over respondents pursuant to California's long-arm statute. Id. at 13. Applying the Ninth Circuit's three-part test for specific jurisdiction, petitioners argue that respondents have purposefully availed themselves of the "privilege of conducting activities in California" because they have repeatedly sought to enforce the terms of the 1997 Agreement—which the Arbitrator found they were bound to as non-signatories—against petitioners. Id. at 13-16. For example, petitioners assert that respondents relied on petitioners' assistance under the 1997 Agreement "while seeking registration of their marks in various jurisdictions," sent petitioners demand letters demanding that they meet their obligations under the 1997 Agreement, and sent petitioners a Notice of Confusion under the 1997 Agreement. Id. at 16-17. Thus, petitioners argue that respondents' enforcement of their obligations against petitioners under the Agreement satisfies the purposeful availment requirement. Id. at 17.

---

[1] As an initial matter, petitioners argue that respondents' combined opposition and motion is procedurally improper and that respondents violated Local Rule 7-3 by failing to confer regarding their personal jurisdiction objection. Reply at 9-10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:21-cv-07989-CAS (AFMx) | Date | August 19, 2024 |
|---|---|---|---|
| Title | SANTA BARBARA POLO CLUB, INC. ET AL V. LIFESTYLE LICENSING B.V. ET AL | | |

For the second requirement that the claim arises out of the forum related activities, petitioners assert that the Final Award directly relates to the foreseeable harm that respondents caused petitioners "by ignoring the requirements of a contract that was negotiated in California and is governed by California law and forcing [petitioners] to seek declaratory relief of the contract's validity." Id. at 18. Petitioners argue that the burden then shifts to respondents to show that the exercise of personal jurisdiction over them would be unreasonable, i.e., "not comport with fair play and substantial justice." Id. Petitioners contend that the Court's personal jurisdiction would be reasonable for several reasons, including that there is likely no conflict with the Netherlands, California has a strong interest in this dispute, the burden on respondents to defend here is minimal, and respondents offer no alternative forum. Id. at 19-21. Finally, petitioners argue that respondents are estopped from objecting to personal jurisdiction. Id. at 21-22.

It appears to the Court that it may properly exercise personal jurisdiction over respondents. The 1997 Agreement at issue is governed by California law and requires that any dispute relating to the Agreement be resolved by arbitration in Los Angeles, California. See dkt. 40-1, Exh. 1 at 10-11. Both the English High Court and the Arbitrator applied California law and determined that respondents—despite being non-signatories—are bound by the 1997 Agreement and the arbitration provision therein. See dkt. 40-1, Exh. 14 at 142-43, 194-96. The Arbitrator also found that respondents relied on the 1997 Agreement in connection with their applications to register trademarks and to grow their markets generally. See id. at 191 ("There is limited, if any, doubt as to the Agreement's authenticity, Respondents' knowledge of the Agreement, or Respondents' reliance on the Agreement when it served their interests."). Respondents' conduct also harmed petitioners—California entities—because petitioners did not oppose respondents' use of the BHPC marks. Id. at 196.

Applying the Ninth Circuit's three-part test, the Court is persuaded that respondents are subject to specific personal jurisdiction. First, respondents purposefully availed themselves of the privilege of conducting business in California by requesting petitioners' assistance under the 1997 Agreement, relying on and benefitting from the Agreement after its assignment to them, and having continuing obligations to petitioners under the Agreement. See Mag Instrument Inc. v. Vinsy Tech. Ltd., No. ED-CV-13359-ABC-OPX, 2014 WL 12567835, at *3 (C.D. Cal. June 25, 2014) ("[T]he assignee assumes the rights and obligations of the assignor, including those that flow from the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL  'O'

| Case No. | 2:21-cv-07989-CAS (AFMx) | Date | August 19, 2024 |
|---|---|---|---|
| Title | SANTA BARBARA POLO CLUB, INC. ET AL V. LIFESTYLE LICENSING B.V. ET AL | | |

terms of any existing agreements burdening the trademark."); see also Quest Nutrition, LLC v. Nutrition Excellence, Inc., No. 2:18-CV-06976-ODWE, 2019 WL 1789880, at *4 (C.D. Cal. Apr. 23, 2019) ("While the formation of a contract with a nonresident defendant *alone* is insufficient to establish minimum contacts, purposeful availment occurs when such an agreement creates continuing relationships and obligations.") (emphasis in original). Second, the arbitration was "directed to the parties['] rights and obligations under the 1997 Agreement" and thus arose out of respondents' relationship with California entities and obligations under a California contract. Dkt. 40-1, Exh. 14 at 142. Third, it would be reasonable for the Court to exercise personal jurisdiction over respondents, particularly because respondents already spent two years participating in arbitration in California. Accordingly, the Court finds that it may exercise personal jurisdiction over respondents and declines to deny petitioners' motion on this basis.

The Court also notes that the appeal of the English High Court's decision has been resolved in favor of petitioners.

### B. Arbitration

Petitioners request that the Court confirm the Final Award issued against respondents in Santa Barbara Polo Club, et al. v. Lifestyle Licensing B.V, et al., AAA Case No. 01-21-0002-0367.[2] Mot. at 7. According to petitioners, the Arbitrator issued five scheduling orders governing submissions and discovery, questioned both parties and several witnesses throughout a four-day hearing, reviewed testimonial and documentary evidence and "nearly a dozen briefs," and ultimately issued an 89-page Partial Final Award and a 32-page Final Award. Id. at 16. Petitioners argue that the Final Award was not irrational but based on the Arbitrator's application of the relevant standards and analysis of both parties' arguments. Id. at 15. They further contend that the Arbitrator "did not misunderstand or misapply the law, let alone manifestly disregard it; and there are no other 'very unusual circumstances' warranting vacating, modifying, or correcting the award." Id. Because there is no basis for the Court not to enforce the Final Award, petitioners argue that the Court must confirm it and enter judgment against respondents. Id. at 16-17. As the prevailing party, they request that they be awarded the fees and costs

---

[2] Petitioners assert that they have satisfied the timeliness and jurisdictional requirements for confirmation of an arbitration award. Mot. at 11-12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:21-cv-07989-CAS (AFMx) | Date | August 19, 2024 |
|---|---|---|---|
| Title | SANTA BARBARA POLO CLUB, INC. ET AL V. LIFESTYLE LICENSING B.V. ET AL | | |

associated with the instant motion and post-judgment interest pursuant to paragraph 7 of the 1997 Agreement.³  Id. at 16-17.

In opposition, respondents argue that the Court should deny petitioners' motion because the Arbitrator both exceeded his authority and ruled on matters not submitted to him for decision.  Id. at 8.  According to respondents, the Arbitrator's attempt to bind foreign courts "as to how they must apply their own countries' public policies in deciding whether the 1997 Agreement can be enforced" exceeded his powers by contradicting Article V(2)(b) of the New York Convention, which permits each signatory "to refuse enforcement and recognition of any arbitration award that 'would be contrary to the public policy of that country.'"  Id. at 9.  They contend that this language also exceeded the Arbitrator's powers because neither party asked him to find that foreign countries could not refuse to enforce the 1997 Agreement in future disputes based on their own public policies.  Id. at 10-11.  Further, respondents argue that the Arbitrator exceeded his powers by awarding petitioners $309,475.54 in expert costs pursuant to the prevailing party provision in the 1997 Agreement.  Id. at 11.  According to respondents, the 1997 Agreement does not address expert costs specifically and states that it shall be construed in accordance with California law, which "explicitly excludes costs related to fees of experts not ordered by the court" for a prevailing party under California Civil Procedure Code Section 1033.5.  Id. at 12-13.  Respondents contend that the AAA's Commercial Arbitration Rules similarly do not support awarding expert costs for experts not requested by the Arbitrator.  Id. at 13-14.

In addition, respondents argue that petitioners' proposed judgment contains language that is incomplete or inconsistent with the Final Award.  Id. at 14.  For example, they assert that the Arbitrator awarded petitioners $1,377,101 in "attorneys' fees and expenses," but petitioners now request that the Court award them $1,377,101 in

---

³ Paragraph 7 of the 1997 Agreement states: "If any arbitration or other proceeding is brought for the breach, enforcement or interpretation of this Agreement, the successful or prevailing party or parties shall be entitled to recover its attorneys' fees and other costs incurred in that action or proceeding, in addition to any other relief to which said party or parties may be entitled."  Dkt. 40-1, Exh. 1 at 10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:21-cv-07989-CAS (AFMx) | Date | August 19, 2024 |
|---|---|---|---|
| Title | SANTA BARBARA POLO CLUB, INC. ET AL V. LIFESTYLE LICENSING B.V. ET AL | | |

"damages."[4]  Id.  They further contend that petitioners incorrectly calculate prejudgment interest and that, without the $309,475.54 in improper expert fees, simple interest should be $22,945.10 ($1,131,973.46 x .10 x (74/365 or .2027)).[5] Id. at 15.

In reply, petitioners argue that the Arbitrator did not exceed his powers and did not deprive foreign courts of their right to enforce the Final Award.  Reply at 24-25.  They contend that the arbitration specifically addressed whether the 1997 Agreement violated the public policy of the U.K. and India based on respondents' own contention that the Agreement was unenforceable in those jurisdictions.  Id. at 25.  According to petitioners, the Arbitrator ruled that the 1997 Agreement is enforceable worldwide but acknowledged that courts of signatory jurisdictions could deny enforcement of the Final Award based on "the public policy defense under the [New York] Convention." Id. at 26-27.

Petitioners also argue that respondents cannot meet the high burden of showing that "the Arbitrator recognized the applicable law and disregarded it" when awarding expert costs.  Id. at 29.  Moreover, they assert that the Arbitrator awarded such costs pursuant to the 1997 Agreement, which states that "the prevailing party can obtain 'its attorneys' fees *and other costs incurred in that action or proceeding*[.]'" Id. (emphasis in original).  They further contend that California law regarding expert costs is not relevant here and that the award of such costs was within the scope of Rule 54 of the AAA Rules. Id. at 29-30.  Even if the Arbitrator's award of expert costs was incorrect, petitioners argue that his mistaken interpretation of the law would still not constitute a "manifest disregard" of the law.  Id. at 31.  Finally, petitioners contend that the proposed judgment

---

[4] Petitioners do not object to describing the amount awarded as "attorneys' fees" instead of "damages." Reply at 32, n.9.  The Court directs petitioners to make this change.
[5] Accordingly, respondents request that the Court: "(1) deny [petitioners'] Motion; (2) vacate or, in the alternative, correct the Final Award to clearly state that nothing in the Award affects the right of any signatory country under the New York Convention (including India and the U.K.) to refuse recognition and enforcement of the Award for any of the reasons enumerated under the convention, including that the Award 'would be contrary to the public policy of that country'; or, at a minimum, (3) correct the Final Award to remove the $309,475.54 in [petitioners'] expert costs improperly included in the Award and reflect the language used in the Award instead of [petitioners'] interpretation thereof." Opp. at 15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:21-cv-07989-CAS (AFMx) | Date | August 19, 2024 |
|---|---|---|---|
| Title | SANTA BARBARA POLO CLUB, INC. ET AL V. LIFESTYLE LICENSING B.V. ET AL | | |

conforms with the Final Award. Id. at 32. They argue that respondents base their calculation of prejudgment interest on the filing date of petitioners' motion rather than the motion's noticed hearing date and incorrectly exclude expert costs from the principal amount. Id. at 32-33. Thus, petitioners argue that their request for $41,466.60 in prejudgment interest "is not inflated nor inconsistent with the Final Award." Id. at 32.

In response to the parties' requests for a declaration regarding the worldwide enforceability of the 1997 Agreement, the Arbitrator concluded that "the 1997 Agreement does not violate the laws or public policy of the United States, England or India and is enforceable worldwide." See Dkt. 40-1, Exh. 14 at 205, 225. In a footnote, the Arbitrator asserted:

> [P]ursuant to the provisions of the New York Convention, to which the U.S., England and India are signatories, the courts of each signatory jurisdiction are <u>bound</u> to recognize and enforce the Final Award in this arbitration subject to limited grounds for denying enforcement. As interpreted by the law of England and, in turn, the law of India, a high threshold is applied to the public policy defense as intended by the Convention. The exception is only applied where it is considered sufficiently serious to warrant refusal of enforcement. Here, particularly given the finding that Respondents have failed to meet their burden of proof, including failing to demonstrate any customer confusion, let alone any genuine and unrectified third party confusion, the enforcement of the 1997 co-existence agreement does not give any ground for public policy refusal for enforcement.

Id. at 210, n.23 (emphasis in original). It does not appear to the Court that the Arbitrator seeks to prevent foreign courts from applying their public policies in the future. In fact, the Arbitrator acknowledged that the public policy defense constitutes one of the "limited grounds for denying enforcement." Id.

However, the Court finds that petitioners should not have been awarded $309,475.54 in expert costs. In the Final Award, the arbitrator found that California Civil Procedure Code § 1033.5 did not apply because the arbitration was "governed by the arbitration agreement . . . and by the AAA Rules" and is "not subject [to] court procedure." Dkt. 40-1 ¶ 125. He noted that AAA Commercial Arbitration Rule R-54 "provides for the parties to equally bear certain expenses unless they agree otherwise or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:21-cv-07989-CAS (AFMx) | Date | August 19, 2024 |
|---|---|---|---|
| Title | SANTA BARBARA POLO CLUB, INC. ET AL V. LIFESTYLE LICENSING B.V. ET AL | | |

unless the Arbitrator assesses expenses against any specified party." Id. ¶ 104. In awarding expert costs, the arbitrator reasoned that the "AAA Rules . . . do not exclude recovery of reasonable expert witness fees [and] AAA Rule[] R-54 . . . allow[s] the Arbitrator discretion to allocate expenses." Id. ¶ 125. However, to the extent that the AAA rules govern, the rules do not appear to permit an arbitrator to award expert costs in this case. AAA Rule R-54 provides that:

> *The expenses of witnesses for either side shall be paid by the party producing such witnesses.* All other expenses of the arbitration, including required travel and other expenses of the arbitrator, AAA representatives, and any witness and the cost of any proof produced at the direct request of the arbitrator, shall be borne equally by the parties, unless they agree otherwise or unless the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties.

AAA Rule R-54 (emphasis added). Thus, R-54 appears to require parties to bear the costs of their own witnesses unless the witnesses were "produced at the direct request of the arbitrator." Id. Here, there is no evidence that the arbitrator requested the use of expert witnesses. Accordingly, the Court exercises its power to "modify[] or correct[] the award" on the basis that the "award is imperfect in matter of form not affecting the merits of the controversy." 9 U.S.C. § 11. Petitioner may not recover expert costs that it incurred during the arbitration. The Court recalculates the total fees and expenses amount to be $1,114,047.15.[6]

---

[6] In the Final Award, the arbitrator awarded petitioner "fees and expenses in the amount of $1,377,101.00." Dkt. 40-1 ¶ 157. He reached this number by (1) starting with petitioner's requested amount of $2,111,794.21; (2) reducing that amount to $1,679.504.25 to "exclude work and expenses from [] other proceedings"; (3) reducing the amount further to $1,620,119.25 to exclude the $59,385.00 in arbitration costs that he considered separately; and (4) further reducing the amount by 15% to "reflect reductions for work specific to the tort claim and reductions for excessive and undocumented charges." Id. Because the Court modifies the award to exclude expert fees, it recalculates the attorneys' fees and expenses amount to be $1,114,047.15.
It reaches this figure by (1) starting with petitioner's requested amount of $2,111,794.21; (2) reducing that amount to $1,310,643.71 to exclude $432,289.96 in work and expenses

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:21-cv-07989-CAS (AFMx) | Date | August 19, 2024 |
|---|---|---|---|
| Title | SANTA BARBARA POLO CLUB, INC. ET AL V. LIFESTYLE LICENSING B.V. ET AL | | |

Finally, regarding prejudgment interest, the parties agree that California Civil Code Section 3287(a) governs. Id. at 267. The parties use the same simple interest formula (P x r x t) to calculate prejudgment interest but disagree as to whether the cut-off date should be when petitioners filed the instant motion or when the Court enters judgment. They also disagree as to whether expert costs should be included in the prejudgment interest calculation.

As the Court already determined, expert costs should not have been awarded and should therefore be excluded in the prejudgment interest calculation. The Court agrees with petitioners that prejudgment interest accrues from the date of the Final Award until the Court enters judgment. Thus, because the Court's ruling on the instant motion is being issued on August 20, 2024, it appears that petitioners are entitled to $34,489.68 in prejudgment interest.[7]

The Court directs petitioners to file a new proposed judgment in accordance with this order.

### V. CONCLUSION

In accordance with the foregoing, the Court **GRANTS in part and DENIES in part** petitioners' motion to confirm the arbitration award and for entry of judgment. The Court modifies the arbitration award such that petitioner may still recover $1,114,047.15 in attorneys' fees and expenses but may not recover $309,475.54 in expert costs. Due to this change, the Court correspondingly adjusts the prejudgment interest calculation to $34,489.68.

IT IS SO ORDERED.

|  | 00 : 08 |
|---|---|
| Initials of Preparer | CMJ |

---

from other proceedings, $59,385.00 in arbitrations costs, and $309,475.54 in expert costs; and (3) reducing the amount further by 15% consistent with the arbitrator's findings.

[7] There are 113 days between April 29, 2024, the date of the Final Award, to August 20, 2024, the filing date of the instant order. The Court calculated simple interest as follows: (P x r x t) = ($1,114,047.15 x 0.10 x (113/365)) = $34,489.68.